UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WORLDHOMECENTER.COM, INC.,

       Plaintiff,       05-CV-3296
               (SJF) (MLO)
  -against-
              **OPINION & ORDER**

MOEN INCORPORATED,

       Defendant.
-------------------------------------------------------X
FEUERSTEIN, J.

I. Introduction

  Plaintiff Worldhomecenter.com, Inc. ("WHC" or "Plaintiff") commenced this action against Moen Incorporated ("Moen" or "Defendant") alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1 (the "Sherman Act"), New York General Business Law § 340 (the "Donnelly Act") and New York General Business Law § 349 (the "Deceptive Practices Act"). Defendant moves to dismiss the complaint, and Plaintiff cross-moves for leave to amend its complaint. For the reasons set forth below, Plaintiff's motion for leave to amend the complaint is granted, but the amended complaint is dismissed for failure to state a claim.

II. Background[1]

  Plaintiff is a self-described "online retailer of home improvement products, selling to and servicing customers exclusively through its website, known as "Homecenter.com." (Cmplt. ¶ 9). Defendant manufactures and sells kitchen and bath products including, <u>inter alia</u>, faucets, sinks and shower fixtures. According to Plaintiff, it has purchased Moen products, among others,

---

[1] Unless indicated otherwise, all facts are drawn from Plaintiff's amended complaint.

1

from "both exclusive and independent distributors for online resale to WHC's customers." Id. ¶ 11. In the past, Plaintiff had also purchased products directly from Moen. However, Plaintiff claims that Moen recently refused to sell its new product line, "Showhouse," directly to Plaintiff, and further informed Plaintiff that it will no longer ship any of its products directly to Plaintiff's customers.

Plaintiff attributes this change in policy to pressure levied upon Moen from traditional "bricks and mortar" distributors. Id. ¶ 24. According to Plaintiff, WHC enjoys a competitive advantage over "display room retailers" because of efficiencies associated with online retailing generally and its business model specifically. Id. ¶¶ 12, 18-20. Plaintiff claims that it is able to sell products, including those manufactured by Moen, at "sharp discounts compared to identical products offered for sale by traditional display room retailers." Id. ¶ 12.

According to Plaintiff, its efficient business model has proved unpopular with the traditional "bricks and mortar" distributors, who apparently view Plaintiff and other internet-only retailers as a "perceived threat." Id. ¶ 24. Plaintiff alleges that these traditional distributors have begun to exert pressure on Moen to "gradually eliminate Internet-only resellers from the distribution chain." Id. ¶ 22. As a result, Plaintiff claims that "Moen has refused to deal with Internet-only resellers such as Plaintiff when introducing new produc[t]s and brands . . . [and] has changed its long-standing business practices and has stopped direct shipments to Plaintiff's customers. Upon information and belief, Moen has further discouraged its authorized distributors from selling to Internet-only resellers." Id. ¶ 23.

Plaintiff filed this lawsuit alleging vertical price fixing in violation of federal and state antitrust laws. According to Plaintiff, the true purpose of Moen's new policy "is the illegal preservation of the artificial minimum price it sets for the resale of its products." Id. ¶ 24. As

evidence of this alleged price-fixing scheme, Plaintiff cites a September 7, 2004 e-mail from Lauren S. Tashma, Assistant General Counsel for Moen's parent company, Fortune Brands, Inc. According to Plaintiff, Ms. Tashma's e-mail reads as follows:

> [I]t is Moen's firm policy not to sell directly to .com operations, although Moen is fine with selling to wholesalers who may then turn around and distribute product from an internet site. Some speaking points:
> 1. Moen provides the wholesale channel with certain programs and pricing intended only for that channel.
> 2. Moen has made representations to other customers that it will not sell direct to internet only businesses. If Moen were to sell direct to a .com company, even an arm of one of its wholesalers, it would be concerned about potentially breaching those representations.
> 3. Moen will continue to sell to wholesalers with internet sales arms, but all sales must be made and shipped directly to the wholesaler.

Id. ¶ 25. Plaintiff claims that this e-mail evinces a "multi-lateral policy . . . [with] the intended effect of maintaining artificially high prices for Moen's products . . . ." Id. ¶ 26.

Plaintiff also cites a September 30, 2004 letter from Ray Fisher, Moen's vice president, to Brian Okin, Plaintiff's "principal officer," id. ¶ 27, which states that "Moen has made representations to other customers that we do not sell direct to Internet-only businesses. If Moen were to sell direct to a .com company we would be breaching those representations. Subsequently, Homecenter.com will no longer be allowed to purchase Moen direct." Id. ¶ 27. Plaintiff alleges that these two documents prove the existence of an illegal price-fixing scheme designed to maintain artificially high prices, while simultaneously excluding internet-only distributors such as Plaintiff. Defendant has moved to dismiss on the ground that the exclusion of internet distributors does not constitute a price-fixing scheme and therefore does not violate the antitrust laws.

III. Analysis

    A.    Leave to Amend

Fed. R. Civ. P. 15 states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In the instant case, Plaintiff has responded to Defendant's motion to dismiss by, <u>inter alia</u>, seeking leave to amend its complaint. Defendant, in its reply papers in support of its motion, has responded to and addressed Plaintiff's proposed Amended Complaint. In light of these factors and the liberal standard afforded by Fed. R. Civ. P. 15 for amendment, Plaintiff's motion for leave to amend the complaint is granted.[2]

    B.    Motion to Dismiss

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be granted where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>Cooper v. Parksy</u>, 140 F.3d 433, 440 (2d Cir. 1998). The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See <u>Koppel v. 4987 Corp.</u>, 167 F.3d 125, 128 (2d Cir. 1999). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Levitt v. Bear Stearns & Co.</u>, 340 F.3d 94, 101 (2d Cir. 2003) (internal citation omitted). To this end, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. See <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995).

---

[2] All references to the 'Complaint' refer to Plaintiff's Amended Complaint.

4

C.  Antitrust Violations

"A complaint pleading a violation of section 1 [of the Sherman Act] must allege a contract, combination or conspiracy that unreasonably restrains trade." Electronic Comm. Corp. v. Toshiba America Consumer Products, Inc., 129 F.3d 240, 243 (2d Cir. 1997).[3] The first step in analyzing a claim under Section 1 is to determine which of two competing analyses, the *per se* test or the rule of reason, should be applied. Flash Electronics, Inc. v. Universal Music & Video Distribution Corp., 312 F. Supp. 2d 379, 385 (E.D.N.Y. 2004) (citing Virgin Atl. Airways Ltd. v. British Airways PLC, 257 F.3d 537 (2d Cir. 2001)). The more stringent of the two tests, the *per se* test, is presumptively disfavored, Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 726 (1988), and should only be applied when the "agreement at issue is of the sort that has proven so manifestly anticompetitive in the past that because of its pernicious effect on competition and lack of any redeeming virtue is conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm it has caused or the business excuse for its use." Flash Electronics, 312 F. Supp. 2d at 385 (quoting, in part, Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 50 (1977) (internal quotations omitted)). Examples of this type of "manifestly anticompetitive" behavior include horizontal and vertical price-fixing, as well as certain types of group boycotts. Flash Electronics, 312 F. Supp. 2d at 385 (citing Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc., 996 F.2d 537, 542-543 (2d Cir. 1993)).

Absent a "manifestly anticompetitive" scheme, the rule of reason analysis applies. Business Electronics Corp., 485 U.S. at 726. Under this analysis, the court is to "consider 'all of

---

[3]Plaintiff's claims under the Sherman and Donnelly Acts are analyzed together, as the shortcomings in its claims under the former doom its claims under the latter as well. Anheuser-Busch, Inc. v. Abrams, 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988); Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 814 F.2d 90, 98 (2d Cir. 1987); Automotive Electric Service Corp. v. Association of Automotive Aftermarket Distributors, 747 F. Supp. 1483, 1509 (E.D.N.Y. 1990).

the circumstances of the case,' such as the nature of the market and market participants involved, in determining whether the agreement at issue has an actual adverse effect on competition." Flash Electronics, 312 F. Supp. 2d at 385 (quoting GTE Sylvania, 433 U.S. at 49).

1. The *Per Se* Test

Plaintiff "seeks a *per se* treatment of its claims against Moen . . . ." (Pl. Mem. in Opp. at 12). While Plaintiff concedes that Moen does not "enjoy[] a substantial market or geographical monopoly over kitchen and bath products," (id.), Plaintiff claims that *per se* treatment is warranted because it "has identified specific hard evidence of Moen's illegal agreements with its wholesale customers to maintain pricing levels of its . . . products." (Id.). This claim is without merit.

According to Plaintiff, the statements by Ms. Tashma and Mr. Fisher evince agreements to artificially inflate prices for its products. (Id. at 14). Even construed in a light most favorable to Plaintiff, however, these statements reflect only that Moen has entered into exclusive distributorship agreements that, although disadvantageous to Plaintiff, are presumptively legal. Elec. Communications Corp., 129 F.3d at 245. The courts have repeatedly and consistently distinguished between agreements among manufacturers and distributors that establish exclusive channels of distribution, and agreements between manufacturers and distributors that intentionally fix the price of the manufacturer's products. See, e.g., id.

In the instant case, the statements on which Plaintiff relies prove only the existence of an agreement between Moen and its "traditional bricks and mortar" distributors that Moen will not distribute its products directly to internet enterprises. Even construing Mr. Fisher's statement in a light most favorable to Plaintiff, it does not reflect the existence of any agreement to fix prices,

but rather Moen's representations to certain distributors that it would distribute its products through them exclusively.

Similarly, Ms. Tashma's e-mail demonstrates only Moen's agreement to distribute its products exclusively through certain channels. Furthermore, while Plaintiff places great emphasis on Ms. Tashma's use of the word "pricing," (see, e.g., Pl. Mem. in Opp. at 8), the Supreme Court has explicitly held that the fact that an agreement "contain[s] the word 'price,' or . . . affect[s] the 'prices' charged by dealers" is not dispositive of whether a vertical restraint merits the *per se* test. Business Electronics Corp., 485 U.S. at 728. As the Court explained, "[s]uch formalism was explicitly rejected in GTE Sylvania . . . . [A]ll vertical restraints, including the exclusive territory agreement held not to be per se illegal in GTE Sylvania, have the potential to allow dealers to increase 'prices' and can be characterized as intended to achieve just that." Business Electronics Corp., 485 U.S. at 728. Thus, while Ms. Tashma's e-mail used the word "pricing," it is clear from the broader context of her e-mail, as well as from Mr. Fisher's letter, that she and Mr. Fisher were simply stating Moen's intent to restrict the distribution of its products to certain distributors. Defendant's policy therefore will not be reviewed under the *per se* test.[4]

---

[4] The inapplicability of the *per se* test is confirmed by the fact that Plaintiff has not made any allegations as to how the alleged price fixing scheme would be economically beneficial to Defendant. Plaintiff admits that it sells products manufactured by Defendant's competitors. (Cmplt. ¶¶ 11, 16). If Defendant had in fact entered into price-fixing agreements whereby it only sold to distributors who resold its products at higher prices, consumers would simply purchase products made by Defendant's competitors through low-cost distributors, such as Plaintiff, thereby putting Defendant and its alleged co-conspirators at an economic disadvantage. Rowe Entm't, Inc. v. William Morris Agency, Inc., 98 Civ. 8272, 2000 U.S. Dist. LEXIS 9256, at *16-17 (S.D.N.Y., Jul. 6, 2000) ("[T]he motive alleged by plaintiffs for the booking agency defendants to participate in the antitrust conspiracy is sufficiently 'economically plausible' to survive this motion to dismiss."); U.S. Info. Sys. v. IBEW Local Union No. 3, 00 Civ. 4763, 2002 U.S. Dist. LEXIS 1038, at *17 (S.D.N.Y., Jan. 23, 2002); cf. Apex Oil Co. v. Di Mauro, 822 F.2d 246, 253 (2d Cir. 1987) (holding that, at the summary judgment stage, "the implausibility of a scheme will reduce the range of inferences that may permissibly be drawn from ambiguous evidence.").

## 2. The Rule of Reason

Under the rule of reason test, the court is to "consider 'all of the circumstances of the case,' such as the nature of the market and market participants involved, in determining whether the agreement at issue has an actual adverse effect on competition." Flash Electronics, 312 F. Supp. 2d at 385 (quoting GTE Sylvania, 433 U.S. at 49). "The antitrust laws . . . were enacted for the protection of competition, not competitors." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977). Thus, Plaintiff must allege that "the challenged action had an actual adverse effect on competition as a whole in the relevant market." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 96 (2d Cir. 1998). Plaintiff has failed to allege or identify any actual adverse effect on competition, and its claim therefore fails under the rule of reason.[5]

As an initial matter, Plaintiff's complaint fails to explicitly identify a relevant market. See Flash Electronics, 312 F. Supp. 2d at 390 ("In order for the claim to survive, it is essential that plaintiffs properly define a relevant market where the alleged anticompetitive effects are being felt."). However, construing the complaint in a light most favorable to Plaintiff, and reading Plaintiff's complaint to allege the relevant market to be "kitchen and bath products," (Pl. Mem. in Opp. at 12; see also Cmplt. ¶¶ 10, 16), Plaintiff still has failed to identify any actual adverse effect on competition in this market, and its claims must therefore fail.

An "exclusive distributorship . . . [arrangement] does not, standing alone, demonstrate antitrust injury." E&L Consulting, Ltd. v. Doman Indus., 360 F. Supp. 2d 465, 474 (E.D.N.Y.

---

[5]The rule of reason test is sometimes also referred to as the "antitrust injury" test. See George Haug Co. v. Rolls Royce Motor Cars, 148 F.3d 136, 139 (2d Cir. 1998). The two analyses are one and the same, however. Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., 996 F.2d 537, 543 (2d Cir. 1993) ("In the general run of cases a plaintiff must prove an antitrust injury under the rule of reason.")

8

2005) (Trager, J.). As the Second Circuit has explained, "manufacturers must enjoy some freedom to determine how to distribute their products without subjecting themselves to attack under the antitrust laws by disappointed distributors, absent activity that is manifestly anticompetitive." Elec. Comm. Corp., 129 F.3d at 245-46. Thus, "[f]or an exclusive dealership arrangement to cause a harm to competition (and overcome the presumption of legality), it must prevent competitors from getting their products to consumers at all." E&L Consulting, Ltd., 360 F. Supp. 2d at 474 (quoting United States v. Visa U.S.A., Inc., 344 F.3d 229, 242 (2d Cir. 2003)). Furthermore, absent sufficient market power by the manufacturer, any attempt to "raise unilaterally prices and profitably maintain those prices above competitive levels and/or restrict output in the market" will fail because "consumers are able to switch to a competitor's product." New York by Abrams v. Anheuser-Busch, Inc., 811 F. Supp. 848, 871 (E.D.N.Y. 1993).

In the instant case, neither Moen's products nor the products of "any other supposed competitor is prevented from reaching customers as a result of defendants' conduct." E&L Consulting, Ltd., 360 F. Supp. 2d at 474. Indeed, Plaintiff's complaint acknowledges that Moen's products continue to be sold, (Cmplt. ¶ 28), and that Moen's competitors' products continue to be sold. (Id. ¶ 16). Thus, as in both E&L and Elec. Communications Corp., this "is essentially a dispute about the way one product is distributed, a question of intrabrand competition." E&L Consulting, Ltd., 360 F. Supp. 2d at 474 (quoting Elec. Communications Corp., 129 F.3d at 244). Furthermore, Plaintiff has conceded that Moen does not control the market in kitchen and bath products. (Pl. Mem. in Opp. at 12). Indeed, Plaintiff's own complaint acknowledges that Plaintiff "is entrusted to resell home improvement products of such nationally known manufacturers such as Delta and Grohe." (Cmplt. ¶ 16). Thus, even to the extent Defendant's alleged arrangement cause the prices of Moen's products to increase,

9

consumers could simply "switch to a competitor's product," such as Delta or Grohe. Anheuser-Busch, Inc., 811 F. Supp. at 871. It is therefore clear from the face of Plaintiff's complaint that Defendant's alleged practices, even if true, do not have actual adverse effect on competition. Plaintiff's antitrust claims therefore fail under the rule of reason test.

D.   Deceptive Practices Act

In order to state a claim under § 349, "a plaintiff must allege that (1) defendant has engaged in an act or practice that is deceptive or misleading in a material way, and (2) plaintiff has been injured by reason thereof." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529 (1995)).[6] A plaintiff also "must charge conduct of the defendant that is consumer-oriented." Oswego Laborers, 85. N.Y.2d at 25.

Plaintiff has failed to adequately allege that Defendant engaged in a deceptive practice. Specifically, Plaintiff has failed to offer any non-conclusory allegations that Defendant engaged in "deceptive acts, representations or omissions . . . [that would be] be misleading to a reasonable consumer." Goshen, 98 N.Y.2d at 324, 774 N.E.2d at 1195, 746 N.Y.S.2d at 863 (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A., 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995); see also Leider v. Ralfe, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005) ("[D]eception is required under § 349 . . . [and m]ere anticompetitive conduct alone will not suffice.") (internal citation omitted). The New York Court of Appeals has explained that § 349 "seeks to secure an honest market place where trust, and not deception,

---

[6]Claims under § 349 are not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

10

prevails," Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195, 746 N.Y.S.2d 858, 863 (2002). Thus, "[a]n antitrust violation may violate section 349, but only if it is deceptive." Leider, 387 F. Supp. 2d at 295. Although Plaintiff repeatedly invokes the word 'deceptive,' it has failed to offer any adequate allegations of deceptive conduct and its § 349 claim must therefore fail.

V.      Conclusion

For the reasons stated above, Plaintiff's motion for leave to amend its complaint is GRANTED, and Defendant's motion to dismiss the amended complaint is GRANTED. The Clerk of the Court is directed to close this case.


IT IS SO ORDERED.


_____
Sandra J. Feuerstein
United States District Judge

Dated: February 23, 2006
Central Islip, New York

11

To:

Lawrence R. Lonergan
Lawrence R. Lonergan, PC
275 Seventh Avenue
25th Floor
New York, NY 10001

John Morin
Jennifer L. Marlborough
Wormser Kiely Galef & Jacobs
825 Third Ave.
New York, NY 10022

Kara A. Elgersma
Michael Sennett
Bell, Boyd & Lloyd
70 West Madison
Suite 3300
Chicago, IL 60602